[Cite as *State v. Anthony*, 2020-Ohio-861.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

STATE OF OHIO,                                    :         **O P I N I O N**

          Plaintiff-Appellee,              :

     - vs -                                         :         **CASE NO. 2019-A-0064**

EUGENE C. ANTHONY,                       :

          Defendant-Appellant.          :


Criminal Appeal from the Ashtabula County Court, Eastern District, Case No. 2018 CRB 00251 E.

Judgment:  Affirmed.


*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Prosecutor's Office, 25 West Jefferson Street, Jefferson, Ohio 44047 (For Plaintiff-Appellee).

*Katherine S. Riedel,* Law Offices of Katherine S. Riedel, Jefferson Commercial Park, 1484 State Route 46 North, No. 5, Jefferson, Ohio 44047 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1}    Appellant, Eugene Anthony, was convicted of assault after a bench trial.  He appeals arguing his conviction is against the manifest weight of the evidence.  We affirm.

{¶2}    Anthony's sole assigned error alleges:

{¶3}    "The trial court erred in finding appellant guilty of assault when the evidence established the affirmative defense of self-defense."

{¶4}     Anthony submits that he should not have been found guilty because the evidence showed he was acting in self-defense.  We disagree.

{¶5}     "Self-defense is an affirmative defense that requires a defendant to prove three elements by a preponderance of the evidence: '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.' *State v. Thomas* (1997), 77 Ohio St.3d 323, 326, 673 N.E.2d 1339; R.C. 2901.05."  *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, ¶ 36.

{¶6}     If proven, self-defense relieves a defendant of criminal liability for the force that he used.  *State v. Kozlosky*, 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097, ¶22.   The manifest-weight standard is the proper standard of review when reviewing a claim that evidence supports self-defense because a self-defense argument does not seek to negate an element of the offense charged but seeks to relieve the defendant from culpability.  *Cleveland v. Williams,* 8th Dist. Cuyahoga No. 81369, 2003-Ohio-31, ¶ 10, citing *State v. Martin*, 21 Ohio St.3d 91, 488 N.E.2d 166 (1986).

{¶7}     While a court of appeals may determine a conviction is sustained by sufficient evidence, it may nevertheless conclude that the judgment is against the weight of the evidence.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997).

{¶8}     "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount*

2

*of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics but depends on its *effect in inducing belief.'* (Emphasis added.) Black's, *supra,* at 1594.

{¶9} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. *[Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211]. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997).

{¶10} R.C. 2903.13(A), assault, provides: "No person shall knowingly cause or attempt to cause physical harm to another * * *."

{¶11} In May of 2018, Anthony's neighbor, Martin Patton, heard someone mowing their lawn after 10 p.m. So, Patton, while on his front porch, shined a high-powered flashlight and confirmed it was Anthony mowing his lawn across the street. Patton then walked across the street toward Anthony's yard to talk with him. The two knew one another as longtime neighbors and did not have a troubled past. They have played frisbee golf together, and Patton's daughter had mowed Anthony's grass on one occasion.

3

{¶12} It was raining out, so after Patton crossed the street, he was looking at the ground to prevent himself from slipping when Anthony got off his mower, came toward Patton, and shoved him to the ground. Patton landed on his back. He recalls being knocked out for a moment, and when he came to, Anthony was yelling and swearing at him and complaining that Patton was trespassing. Patton said he had pain in his head and neck and was wet and covered in mud.

{¶13} Patton returned to his home and called the police. Ashtabula County Sherriff's Deputy Patrick Evans and Sergeant Bryan Rose responded and spoke with Patton. Evans testified that Patton had mud on his backside. Evans also recalls Patton complaining of head and neck pain but said he refused emergency medical treatment. Evans does not recall Patton telling him that he lost consciousness from the fall and could not determine where in the yard Patton had fallen. Evans observed that the lawn was recently mowed.

{¶14} In order to speak with Anthony, the officers repeatedly beat on Anthony's door, but no one answered. The officers also knocked on Anthony's windows with no response.

{¶15} Anthony testified on his own behalf and explained that he worked a 15-hour day and was heading out of town very early the next morning. So, he had to get his lawn mowed even though it was late. Anthony recalls someone approaching him in the dark with something shiny in their hand. He said he thought the person had a knife. Thus, Anthony jumped off his mower because he felt threatened and pushed the person. He told them to leave because they were trespassing.

{¶16} Anthony repeatedly states during his testimony that he was defending himself since the other person was on his property. Anthony testified that he then went

4

into his house and passed out asleep until the next day. He denies hearing police banging on his door or windows.

{¶17} On cross-examination, Anthony concedes that just before this altercation he saw someone "spotlighting" him from Patton's porch. Anthony said he thought they were probably upset with him for the late-night mowing. Notwithstanding, Anthony denied knowing the trespasser in his yard was Patton. Anthony claims this person was charging at him and that Anthony panicked. He denies that Patton had a flashlight when he approached him and instead recalls Patton only holding a cigarette and a zippo lighter.

{¶18} In rejecting Anthony's self-defense argument, the trial court finds his testimony incredible, stating in part that Anthony had worked more than 15 hours that day, was tired, and did not believe that cutting the lawn after 10 p.m. would raise any ire from his neighbors. The court continued:

{¶19} "[Anthony] also testified that he saw a flashlight from across the street and assumed at that point that it was his neighbor, and * * * when the individual approached him, * * * he had a reason to feel that he was in harm's way.

{¶20} "Well, the Court finds that that is not believable and that he knew it was his neighbor. He wanted to get his lawn cut, and, unfortunately for him, being in the tired mood that he was in and under pressure, * * * - - he lost his temper and put his hands on his neighbor, pushed him down.

{¶21} "[Anthony's] assertion that he went right back in the house and was so exhausted and fell asleep after an event like this, with two deputies approaching the house, one of them testifying that he banged on the door and that [Anthony] was just dead asleep * * *, is not believable. I believe he was avoiding contact with law enforcement."

5

{¶22} Thus, the trial court rejected his self-defense claim based on the first two self-defense prongs and did not address the third. As for the first, in finding that Anthony lost his temper because he was tired, the court rejected the predicate for the first prong, i.e., that Anthony was not at fault in creating the violent situation. And in finding that Anthony knew it was his neighbor that was approaching him that night in the rain, the court also rejected the second prong for self-defense, i.e., that Anthony had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force.

{¶23} Consistent with the court's analysis, Anthony's claim that he was in fear of imminent danger is dubious considering his admission that only moments earlier, he saw someone shining a flashlight toward him from Patton's porch. Further, there was nothing evidencing that the two men had a troubled past with one another warranting Anthony's claim of being in fear for his safety.

{¶24} Thus, we do not find that the court clearly lost its way or that this is an exceptional case in which the evidence weighs heavily against the conviction. Accordingly, Anthony's sole assigned error lacks merit.

{¶25} The trial court's decision is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.